UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JANSEN MICHAEL SIMON                              CIVIL ACTION

VERSUS                                            NO. 20-1854

SHERIFF JERRY LARPENTER ET AL.                    SECTION "G" (2)

## REPORT AND RECOMMENDATION

Plaintiff Jansen Michael Simon is a prisoner incarcerated in the Terrebonne Parish Correctional Center in Houma, Louisiana.[1] He filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against four defendants: Sheriff Jerry Larpenter; Warden Stephen Bergeron; Deputy Brody Fanguy; and Officer Dontrell Steele. These matters were taken under submission and are addressed in this Report and Recommendation.

I.    **BACKGROUND**

A.    **Factual Allegations**

Simon's complaint alleges generally that the prison staff endangers inmates by exposure to COVID-19 because they do not wear masks or wear masks improperly and they go home and could bring the virus back into the prison.[2] He claims that unnamed trusty workers who serve food to the inmates likewise do not always wear masks, which endangers his health and safety.[3] He used the prison's grievance process in April 2020 to complain about the failure of prison officers and staff to wear the personal protective equipment but received no relief through the grievance

---

[1] ECF No. 1 at 1.
[2] ECF No. 1 at 5.
[3] *Id.*

process.[4] Simon filed this civil action seeking monetary damages for the alleged threat to his health, safety and life.[5]

**B.  _Spears_ Hearing Testimony**

On October 22, 2020, I conducted a telephone conference in this matter. Participating via telephone were plaintiff, _pro se_; and William Dodd, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by _Spears v. McCotter_, 766 F.2d 179 (5th Cir. 1985), _overruled on other grounds by Neitzke v. Williams_, 490 U.S. 319 (1989), and its progeny.

Simon testified that neither Terrebonne Parish Sheriff Jerry Larpenter nor Warden Stephen Bergeron was personally involved in any of the events giving rise to his claims in this matter, and that he named them as defendants only because of their supervisory authority over the officers named as defendants.  He further testified that, on two occasions, Terrebonne Parish Deputy Brody Fanguy wore his protective mask improperly. On one occasion, Deputy Fanguy wore the mask so that only his chin was covered. On another occasion, he wore it covering his mouth but not covering his nose. Simon testified that he asked Deputy Fanguy to wear his mask properly, but Deputy Fanguy did not make any adjustments to his mask.

Once, in the cafeteria, Deputy Fanguy was not wearing his mask properly and a trusty worker was not wearing a mask at all, and Simon complained to Deputy Fanguy. Deputy Fanguy responded to Simon's complaints by telling Simon to "move along" and to take his meal tray. Simon refused to take his meal tray that day. Simon testified that he personally complained to Deputy Fanguy more than five times about the failure of the officers, deputies, staff and inmate workers to wear (or properly wear) personal protective equipment. Simon testified that he is suing Deputy Fanguy in his official and individual capacities.

---

[4] _Id._ at 7-10.
[5] _Id._ at 5.

Simon testified that, on at least three occasions, Officer Dontrell Steele did not wear a mask. Each time, Simon told Officer Steele that he had to wear a mask. On one occasion, Officer Steele cursed at Simon and slammed the hatch hole cover in his face. Simon testified that he personally complained to Officer Steele three or four times about the staff's failure to wear (or properly wear) personal protective equipment. Simon testified that he is suing Officer Steele in his official and individual capacities.

Simon testified that staff and/or inmate workers at the prison prepared, handled and delivered food trays without wearing personal protective equipment (including gloves and masks), or without wearing their masks properly.  He testified that, initially, after learning about COVID-19, the staff and inmate workers wore masks and gloves, but within four or five days, their compliance became intermittent. Simon was unable to identify any of the inmate workers by name. He testified that he refused his food several times because he knew that the individuals who prepared, handled and delivered the food were not wearing masks or gloves. Simon has listed other inmates and an inmate worker as witnesses to his telling prison staff and officers to wear personal protective equipment or to wear it properly.

Simon testified that he doesn't know all of the protocols and policies put in place by the Terrebonne Parish Correctional Center in response to COVID-19, but he knows that the staff and officers were given masks because they wore them initially, but at some point stopped wearing them or began wearing them improperly. Simon testified that the inmates were provided with bars of soap that were not antibacterial and that they were never provided with hand sanitizer. He stated that the prison facility is sprayed down every two weeks to prevent the spread of COVID-19.  With regard to masks, Simon testified that he is not alleging that there is or was any "policy" or "order" in place that involved intentionally exposing inmates to COVID-19; rather, he alleges lack of

enforcement or negligence in how the mandate was carried out at the prison. Simon testified that he asked unnamed officers why the inmates had to wear masks but the officers and staff didn't have to wear them, and on one occasion Simon was told, in response, to wear his mask or he would be placed in lockdown.

Simon testified that he asked for a COVID-19 test in April 2020 but he was denied because he was not running a fever. The week of October 12, 2020, all of the inmates received mouth swab tests for COVID-19, and were subsequently advised that they all tested negative for COVID-19. Simon testified that at some time in the Spring of 2020 he was sick for two-and-a-half weeks. During that time, he experienced migraines and consistently felt nauseated. He was seen by medical staff and was provided with Naproxen daily. He asked for Naproxen nine or ten times and he received it.

Simon filed multiple grievances in April 2020 complaining about the failure of the officers, staff, and trustees to wear personal protective equipment and/or to wear it correctly. Simon testified that he believes that he filed his first grievance using the prison computer system, but doesn't recall the date. He filed two additional grievances on April 10, 2020, filed another grievance on April 11, 2020, and filed a final grievance on April 12, 2020. He did not obtain relief at any stage. The last three grievances were simply marked "I concur" and identified as "duplicates." Simon testified that he appealed the first grievance and possibly others, and that he took at least one appeal all the way through the process, culminating in his writing a "sensitive grievance" to Sheriff Larpenter.

## II.    LEGAL STANDARD

A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing.[6]  Such complaints by prisoners must be dismissed upon review if they are frivolous

---

[6] 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

and/or fail to state a claim.[7]  "A federal court may dismiss a claim *in forma pauperis* 'if satisfied that the action is frivolous or malicious.'"[8]  A complaint is frivolous "if it lacks an arguable basis in law or fact."[9]  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[10]

The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[11]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[12]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under FED. R. CIV. P. 12(e).[13]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[14]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[15]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[16]  However, "'[m]edical records of sick calls,

---

[7] 28 U.S.C. § 1915A(b)(1); *see also id.* §1915(e)(2)(B).
[8] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).
[9] *Nietzke*, 490 U.S. at 325; *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).
[10] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327).
[11] *Spears*, 766 F.2d at 180.
[12] *Davis*, 157 F.3d at 1005.
[13] *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[14] *Spears*, 766 F.2d at 182.
[15] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992))
[16] *Id.* (citing *Wilson*, 926 F.2d at 482–83; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).

examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"[17]

After conducting a *Spears* hearing and providing an opportunity to expound the claim, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[18] or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."[19] A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[20] "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[21] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."[22] A prisoner's *in forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

## III.   LAW AND ANALYSIS

Section 1983 authorizes lawsuits for monetary damages or injunctive relief against those acting under the color of state law who violate a citizen's constitutional rights:

---

[17] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).
[18] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992)
[19] *Moore*, 976 F.2d at 270.
[20] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation omitted).
[21] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[22] *Moore*, 976 F.2d at 269.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[23]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[24]  Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[25]  Inmates such as Plaintiff may seek relief under this statute if the conditions of their confinement are so severe that they violate the inmate's constitutional rights.[26]

To establish § 1983 liability, a plaintiff must allege:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[27]

To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[28]

In this case, Simon's complaint, liberally construed[29] and considering his *Spears* testimony, should be dismissed with prejudice as to Sheriff Larpenter and Warden Bergeron pursuant to 28

---

[23] 42 U.S.C. § 1983.
[24] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).
[25] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[26] *Id.*
[27] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[28] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006).
[29] The court must "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel," *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011), *cert. denied*, 565 U.S. 1263 (2012) (quotation omitted); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

U.S.C. § 1915(e)(2) and/or 42 U.S.C. § 1997e(c)(1) on the basis that Sheriff Larpenter and Warden Bergeron were not personally involved in the acts causing the alleged deprivation of constitutional rights. Additionally, Simon's claims against unnamed inmates should be dismissed because the inmates are not "state actors" for purposes of § 1983. Finally, Simon's claims against defendants Fanguy and Steele should be dismissed pursuant to 28 U.S.C. § 1915(e)(2), 42 U.S.C. § 1997e(c)(1) and/or Rule 12(b)(6) because Simon's allegations as to these defendants fail to establish a cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.

### A. <u>No Liability of Sheriff Larpenter and Warden Bergeron in their Official Capacity</u>

Simon has named Sheriff Larpenter and Warden Bergeron as defendants in this case. He testified at the *Spears* hearing that neither Sheriff Larpenter nor Warden Bergeron were personally involved in any of the alleged acts or omissions upon which his claims are based. Simon confirmed during the *Spears* hearing that he named Sheriff Larpenter and Warden Bergeron as defendants in this action based solely upon their official responsibilities over the deputies and staff at the Terrebonne Parish Correctional Center.

To hold Sheriff Larpenter and Warden Bergeron personally liable, plaintiff must establish either that these defendants were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendants] . . . and the alleged constitutional violation."[30] As stated above, Simon admits that neither Sheriff Larpenter or Warden Bergeron was personally involved in any acts causing the deprivation of his constitutional rights. Simon also fails to allege facts to establish that a causal connection exists between any act of Sheriff Larpenter or Warden Bergeron and the alleged constitutional violations.

---

[30] *Douthit*, 641 F.2d at 346; *accord Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114–15.

8

Broadly construed, Simon's complaint and *Spears* testimony seek to hold Sheriff Larpenter and Warden Bergeron vicariously liable for the actions of their subordinates at the prison who allegedly endangered plaintiff by not wearing (or not wearing properly) personal protective equipment. "There is no respondeat superior liability under section 1983."[31] Sheriff Larpenter and Warden Bergeron cannot be held liable under § 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injuries were in their employ or under their supervision.[32] A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.[33] Simon has alleged no policy for which Sheriff Larpenter or Warden Bergeron can be held constitutionally liable. He admitted during his Spears hearing that he was not alleging implementation of such a policy, and indeed, indicated that there must have been a policy to wear masks as masks were issued and initially worn. Simon fails to state a claim for relief against Sheriff Larpenter and Warden Bergeron under § 1983.[34]

For the foregoing reasons, Simon's claims against Sheriff Larpenter and Warden Bergeron should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[35]

## B.  No Liability of Inmates

Simon has alleged that certain inmate workers failed to wear personal protective equipment when preparing and distributing food, risking the spread of COVID-19. A plaintiff seeking to

---

[31] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1115.

[32] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

[33] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

[34] *Monell*, 436 U.S. at 691–95; *Thompson*, 348 F. App'x at 921–22; *Mouille*, 977 F.2d at 929.

[35] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

recover damages under § 1983 must establish that a defendant has acted under color of state law in violating his rights.[36] A plaintiff can establish that a defendant acted under color of state law only if he can show that a defendant's actions are "fairly attributable to the state."[37] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[38]

Simon alleges no facts to support a claim that his fellow inmates' conduct is attributable to the State in any way — for example,  Simon has not alleged that the inmate workers were acting under "compulsion from the State" or were willful participants in joint activity with the state when they failed to wear protective personal equipment while preparing or delivering food to the inmates.[39] Numerous cases have held that an inmate is not a state actor or a person acting under the color of state law for purposes of stating a claim under § 1983.[40] Because Simon fails to allege facts establishing that the inmate trusty workers are state actors, his § 1983 claims against them have no basis in federal law, and are therefore frivolous.

C. **Conditions of Confinement – Failure to Wear Personal Protective Equipment Was Not Deliberately Indifferent Under Eighth Amendment**

Simon alleges that Deputy Fanguy and Officer Steele endangered him by not wearing (or improperly wearing) masks as needed to prevent the spread of COVID-19.

---

[36] *Daniels v. Williams*, 474 U.S. 327 (1986).

[37] *West v. Atkins*, 487 U.S. 42, 49 (1988); *accord Johnson ex rel. Wilson v. Dowd*, 305 F. App'x. 221, 2008 WL 5212795, at *2 (5th Cir. 2008); *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

[38] *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[39] *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (actions may be attributable to the state if the private citizen is a willful participant in joint activity with a State or its agents).

[40] *See, e.g., Batiste v. Gusman*, 2013 WL 6095833, at *3 (E.D. La. Nov. 20, 2013) ("It is well settled that an inmate involved in a prison fight is not a person acting under color of state law as required for liability under § 1983."); *Bland v. Terrebonne Parish Criminal Justice Complex*, 2009 WL 3486449, at *3 (E.D. La. Oct. 23, 2009) (same); *Butler v. Jenkins*, 450 F. Supp. 574 (E.D. Tenn. 1978) (same).

The Fifth Circuit, district courts within the Fifth Circuit, and other circuit and district courts have evaluated prison officials' responses to COVID-19 by applying the Eighth Amendment's deliberate indifference standard.[41] The Fifth Circuit in *Valentine* recently held:

> The Eighth Amendment requires prison officials to provide humane conditions of confinement with due regard for inmate health and safety. To show a violation, inmates must prove that they were exposed to a **substantial risk of serious harm** and that prison officials **acted or failed to act with deliberate indifference** to that risk.[42]

The presence of a substantial risk is an objective inquiry. To satisfy the objective requirement, the plaintiff must show an "objectively intolerable risk of harm."[43] The presence of deliberate indifference is a subjective inquiry. To show "deliberate indifference," the plaintiff must show that the defendant had "a subjective 'state of mind more blameworthy than negligence,' akin to criminal recklessness."[44] The question is not "'whether [the Defendants] reasonably abate[d] the risk' of infection."[45] A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[46] Inadequate measures alone are not dispositive of the Defendants' mental

---

[41] *See Valentine v. Collier*, -- F.3d --, 2020 WL 6039993 *6-7 (5th Cir. 10/13/2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)); *Valentine v. Collier*, 956 F.3d 707, 801 (5th Cir. 2020); *J.H. by and through N.H. v. Edwards*, No. 20-293, 2020 WL 3448087 *32 (M.D. La. 6/24/2020); *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (applying deliberate indifference standard for Eighth and Fourteenth Amendment claims and staying district court's issuance of a preliminary injunction against jail facility); *Sacal-Micha v. Longoria*, No. 1:20-CV-37, 2020 WL 1518861, at *4 (S.D. Tex. Mar. 27, 2020) ("A detainee can establish a constitutional violation based on inadequate conditions of his confinement. But to do so, he must demonstrate that the officials acted with deliberate indifference to his medical needs or his safety."); *Mohammed S. v. Tritten*, No. 20-CV-793 (NEB/ECW), 2020 WL 2750836, at *22 (D. Minn. Apr. 28, 2020) (stating, in denying motion for TRO brought by ICE detainee in response to COVID-19, that "the deliberate indifference test, not the freedom from punishment test, applies to a claim challenging the adequacy of precautionary measures to reduce the risk of infection: 'The governmental duty to protect at issue in this case is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and general well-being.' (citing *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006)), R. & R. adopted, No. 20-CV-783 (NEB/ECW), 2020 WL 2750109 (D. Minn. May 27, 2020).

[42] 2020 WL 6039993 *5 (quotations omitted) (emphasis added).

[43] *Valentine*, 956 F.3d at 801 (citing *Farmer*, 511 U.S. at 846).

[44] *Id*. at 802 (citing *Farmer*, 511 U.S. at 835, 839-40).

[45] *Id.*

[46] *Farmer*, 511 U.S. at 837.

state; "[s]uch an approach resembles the standard for civil negligence, which *Farmer* explicitly rejected."[47] If a plaintiff fails to establish either component, he cannot establish an Eighth Amendment claim.[48] In *Valentine*, the Fifth Circuit reversed the district court for improperly collapsing the objective and subjective components of the Eighth Amendment analysis when analyzing a prisoner's claim that the prison, although it took measures to prevent the spread of COVID-19, did not do *all that it could have done* to stop the spread of COVID-19.[49] The Fifth Circuit found that an *unsuccessful* response to COVID-19 did not evince wanton disregard for inmates' medical needs.[50]

Simon's pleadings, as expanded by his *Spears* testimony, fail to establish a plausible basis for finding that defendants Fanguy and Steele had a state of mind akin to criminal recklessness. Simon testified during the *Spears* hearing that he is not alleging that there was any "policy" or "order" in place that involved intentionally exposing inmates to COVID-19. Instead, he alleges at most the episodic failure of Deputy Fanguy and Officer Steele to abide by what Simon understood to be the prison's requirement that its officers and personnel wear personal protective equipment such as masks and gloves -- Deputy Fanguy failed to wear a mask or wear a mask properly five times and Officer Steele failed to wear a mask or wear a mask properly on four times. This alleged conduct is, at best, akin to negligence. Claims arising from negligent acts do not give rise to relief under § 1983.[51] Simon's complaints about the failure of Deputy Fanguy and Officer Steele to wear masks/wear masks properly on a number of occasions must be dismissed as frivolous and/or for failure to state a claim for relief.[52]

---

[47] *Valentine*, 956 F.3d at 802 (citing *Farmer*, 511 U.S. at 835, 839-40).
[48] *Id.*
[49] *Id.* at 802-803.
[50] *Id.*; *see also Valentine*, 2020 WL 6039993 *6.
[51] *Daniels*, 474 U.S. at 328; *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).
[52] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

## <u>RECOMMENDATION</u>

For the foregoing reasons,

IT IS RECOMMENDED that Simon's claims against Sheriff Jerry Larpenter and Warden Stephen Bergeron be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted because Simon has not alleged that either of these defendants was personally involved in any alleged constitutional violation or that they implemented an unconstitutional policy.

IT IS FURTHER RECOMMENDED that Simon's claims against unnamed inmate workers be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted because the inmate workers are not state actors who may be held liable under § 1983.

IT IS FURTHER RECOMMENDED that Simon's claims against Deputy Brody Fanguy and Officer Dontrell Steel be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted because Simon has not alleged facts showing that defendants acted with deliberate indifference on the part of these defendants in failing to wear personal protective equipment or to wear such equipment properly.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[53]

---

[53] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). Douglass referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).

New Orleans, Louisiana, this 10th day of November, 2020.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE